# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

DIANE MICHELLE SCHLUMBAUM

        Defendant.

**CASE NO.: 02-CR-4017**

**ORDER**

_____

## I.  INTRODUCTION

After a three-day jury trial, Diane Schlumbaum was convicted of conspiracy to distribute 500 grams or more of methamphetamine within 1,000 feet of a protected location (Docket No. 51).  Following her trial, Schlumbaum entered into a "post-trial cooperation agreement" with the Government. (Government's Exhibit 101).  In this agreement, Schlumbaum agreed to cooperate with the United States Attorney's Office in the Northern District of Iowa by providing intelligence, arranging purchases, introducing undercover agents to substance traffickers and other similar conduct.  Id. at 2-3. Also in this agreement, under the section titled "Sentencing Provisions," Schlumbaum agreed that her sentencing guidelines consist of a base offense level of 38, with a two-level downward adjustment under §5C1.2, two-level upward adjustment under §3B1.4, and one-level upward adjustment under

§2D1.2(a)(2). This made Schlumbaum's agreed upon base offense level a 39, with her criminal history of 1, giving her an imprisonment range of 262-327 months.

On July 3, 2003, she was sentenced to a term of 262 months (Docket No. 74). Thereafter, on July 27, 2005, she filed a pro se Motion Under 28 U.S.C. §2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Docket No. 81).

In this motion, Schlumbaum alleges four grounds for relief. First, Schlumbaum alleges that her counsel was ineffective. Second, that "there was no physical evidence or drugs seized at time of arrest." Third, that "the defendant was found guilty on a jury trial." Fourth, that "the defendant has favorable evidence which would warrant a departure." (Docket No. 81, at 4-5). Schlumbaum filed an "Addendum to Motion under 28 U.S.C. 2255" in which she "pleads with [the Court] to accept the Motion filed" based on four factors. (Docket No. 81-2). First, she alleges that "the sentence imposed was excessive and the Court had no control taking in consideration mitigating factors which would have warranted a downward departure." Second, she argues that her counsel was ineffective for refusing to let her testify, for

misleading the defendant into thinking that the sentence imposed would be less, and for failing to inform the Court of the cooperation of the defendant's husband. Third, Schlumbaum contends that her counsel failed to file pre-trial motions and challenge the informants, and that the "culpability and credibility of these witnesses were never questioned." And fourth, she argues that she was convicted based on testimony of others, not based on physical evidence. Schlumbaum's motion can best be summarized by her own statement: "In any jury trial the physical evidence plays an important factor, and she does not understand how "<u>Beyond a Reasonable Doubt</u>" the amount of drugs was determined and found unfairly, based on criminals and drug-user's testimony." (Docket No. 81-2, 1-2)(emphasis in original).

Schlumbaum's counsel filed an "Amended Petition for Writ of Habeas Corpus" arguing that Schlumbaum's Fifth and Sixth Amendment rights were violated. (Docket No. 86). In this motion, Schlumbaum reiterates her claims that she was denied effective assistance of counsel for failing to appeal and she was denied the right to testify on her own behalf in her criminal trial. (Docket No. 86, at 3).

The Government filed a Motion to Dismiss based on Schlumbaum's failure to file this current motion within the one-year statute of limitations. (Docket No. 87). The Government alleges that Schlumbaum's time limitation began running on July 13, 2003, the date on which her judgment became final, and therefore, this current motion filed June 27, 2005, is untimely and should be dismissed. (Docket No. 87, at 2).

The Government filed a "Response to Defendant's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255." (Docket No. 91). In it's brief, the Government reargues that the Court should dismiss the motion as untimely, and alternatively, that Schlumbaum was not denied effective assistance of counsel. (Docket No. 91-2, at 8-14).

## II. LEGAL ANALYSIS

### A. Standards for 28 U.S.C. § 2255 Motions

The subject matter grounds for relief under 18 U.S.C. § 2255 are:

> (1) that the sentence was imposed in violation of the Constitution or laws of the United States;
> (2) that the court was without jurisdiction to impose such sentence;
> (3) that the sentence was in excess of the maximum authorized by law; and

> (4) that the sentence is otherwise subject
> to collateral attack.

Jackson v. United States, 495 F.2d 349, 351 (8th Cir. 1974),

(quoting Hill v. United States, 368 U.S. 424, 426-27 (1962)).

28 U.S.C. § 2255(f) provides that:

> "A 1-year period of limitation shall apply
> to a motion under this section.    The
> limitation period shall run from the latest
> of—
>
> (1) the date on which the judgment of
> conviction becomes final;
> (2) the date on which the impediment to
> making a motion created by
> governmental action in violation of
> the Constitution or laws of the United
> States is removed, if the movant was
> prevented from making a motion by such
> governmental action;
> (3) the date on which the right asserted
> was initially recognized by the
> Supreme Court, if that right has been
> newly recognized by the Supreme Court
> and made retroactively applicable to
> cases on collateral review; or
> (4) the date on which the facts supporting
> the claim or claims presented could
> have been discovered through the
> exercise of due diligence.

The doctrine of equitable tolling can toll the one-year

statute of limitations provided under § 2255.    Equitable

tolling is only appropriate in instances where extraordinary

circumstances beyond a petitioner's control prevent timely

filing.  United States v. Martin, 408 F.3d 1089, 1093 (8th

Cir. 2005)(Martin's attorney "misrepresented the law, misrepresented the status of Martin's case, and retained possession of documents that were crucial to Martin's claim. Martin reasonably relied on [his attorney's] misrepresentations, and demonstrated due diligence in pursuing his § 2255 claim.")  The petitioner must also demonstrate he acted with due diligence in pursuing his petition.  <u>Martin</u>, 408 F.3d at 1095.

In her original and amended motion, Schlumbaum claims she received ineffective assistance of counsel during her trial and sentencing.  The Sixth Amendment guarantees the right of the accused in criminal prosecutions to "the Assistance of Counsel for his defense."  U.S. Const. amend. VI.  "[T]he right to counsel is the right to effective assistance of counsel."  <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 377 (1986).  Effective assistance is representation that "play[s] the role necessary to ensure that the trial is fair."  <u>Strickland v. Washington</u>, 466 U.S. 668, 685 (1984).  To show a constitutional violation of the right to counsel, a convicted defendant must show first that counsel's performance was deficient, and second, that counsel's errors prejudiced the defense.  <u>Strickland</u>, 466 U.S. at 687.  Thus, <u>Strickland</u>

6

requires that a showing of both deficient performance and prejudice. <u>Id.</u> However, a "Court need not address the reasonableness of the attorney's behavior if the movant cannot prove prejudice." <u>U.S. v. Apfel</u>, 97 F.3d 1074, 1076 (8th Cir. 1996).

The test we apply for deficiency of performance is an objective standard of reasonableness. <u>Id.</u> at 688. In <u>Strickland</u>, the Court stated we must assess reasonableness on all the facts of the particular case, we must view the facts as they existed at the time of counsel's conduct, and we must evaluate counsel's performance with a view to whether counsel functioned to assure adversarial testing of the state's case. <u>Id.</u> at 690. A court considering a defendant's attack on his conviction must be "highly deferential" in assessing whether counsel's course of conduct could be considered a sound trial strategy rather than an error and must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," <u>Id.</u> at 689. In other words, the burden of proof is on the petitioner to show that "his attorney's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." <u>Kimmelman</u>, 477 U.S. at 384. "The

question is whether there is a reasonable probability that, absent those errors, the fact finder would have had a reasonable doubt respecting guilt." Strickland, 466 U.S. at 695.

## B. Statute of Limitations

Schlumbaum was sentenced on July 3, 2003, and she did not appeal this sentence. Therefore, the relevant date for any statute of limitations argument began running on July 13, 2003, when her conviction became final. On June 27, 2005, she filed her motion under 28 U.S.C. § 2255, nearly two years after her conviction became final.

Schlumbaum argues that the Court should not dismiss her action as untimely because the doctrine of equitable tolling can apply to the one-year limitations period for a motion to vacate. There are two tests for determining when equitable tolling is appropriate: (1) if there are "extraordinary circumstances" beyond a movant's control that would keep him from filing in a timely fashion, see Martin, 408 F.3d at 1093, or (2) if the government's conduct "lulled" the movant into inaction through reliance on that conduct, see Maghee v. Ault, 410 F.3d 473, 476 (8th Cir. 2005). Here, Schlumbaum argues that she was told by her trial counsel's paralegal that she

had two years to file her § 2255 motion. She further argues that she would have filed within one year had she known of the one-year statute of limitations.

This case is not as gross as <u>Martin</u>. In <u>Martin</u>, the Eighth Circuit found that equitable tolling was appropriate based on Martin's and his family member's actions. Here, Martin's family member's attempted approximately 40 telephone calls to his attorney's office, which were not returned. <u>Martin</u>, 408 F.3d at 1090. His wife went to two appointments at Martin's attorney's office, which said attorney failed to attend. <u>Id.</u> Furthermore, Martin's counsel would not take Martin's phone calls, never returned any of the documents that Martin sent him despite his demand that he do so, and repeatedly lied to defendant and his wife about the filing deadline for the motion and the status of the case, telling them that there was no deadline. <u>Id.</u> at 1090-91. Finally, Martin's counsel lied and stated the motion had been filed. <u>Id.</u>

In this case, Schlumbaum's trial counsel testified at a hearing on the matter that she is unaware of Schlumbaum calling her office and speaking with her paralegal. Her trial counsel also stated that she has strong doubts as to whether

her paralegal would have given legal advice, but that since
she was not present, she cannot be sure of this fact.  Her
trial counsel also testified that she was in frequent contact
with Schlumbaum after her sentencing and that never once did
Schlumbaum ask her to file a §2255 motion.  This was because,
as her trial counsel testified, they were "pinning their
hopes" on a Rule 35 motion for Schlumbaum based on her
husband's cooperation.

The Court will not find that Schlumbaum or her former
trial counsel are untruthful, and will not rule on whether she
is barred by the statute of limitations or whether equitable
tolling applies.  The Court is persuaded that there are good
arguments for tolling and will decide the substantive issues
of Schlumbaum's motion.

## C.  Substantive Claims

Schlumbaum's claims can be categorized in three areas.
First, ineffective assistance of counsel; second, sentencing
issues; and third, evidentiary issues.  The Court will address
each of these below.

### 1.  Ineffective Assistance of Counsel

Schlumbaum argues that her counsel was ineffective for
failing to appeal, for not allowing her to testify during her

criminal trial, for misleading her into thinking that her sentence would be much less, "for failing to file for time imposed," for failing to inform the court of her husband's cooperation, for not filing pretrial motions, and not challenging the witnesses' credibility and culpability during her criminal trial. (Docket No. 81, at 4-5). As the Eighth Circuit stated, there can be no ineffective assistance of counsel unless the movant can prove prejudice. <u>See</u> <u>Strickland</u>, 466 U.S. at 687. To establish prejudice, Schlumbaum must show that a reasonable probability exists that, but for counsel's errors, the result of the proceeding would have been different. <u>See</u> <u>Cheek v. U.S.</u>, 858 F.2d 1330, 1336 (8th Cir. 1988)(<u>citing</u> <u>Strickland</u>, 466 U.S. at 694). As noted, the burden of proof is on Schlumbaum to show that her "attorney's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." <u>Kimmelman</u>, 477 U.S. at 384.

First, in her motion, Schlumbaum alleges that she told her attorney to appeal, and her attorney never appealed her sentence. Schlumbaum was told by the Court at her sentencing of her right to appeal and the requirement that she file a notice of appeal within 10 days. Her trial counsel also

testified that it was Schlumbaum's desire to forego an appeal, enter into a cooperation agreement with the Government, and hope that the work her husband did for the Government would persuade the Government to make a rule 35 motion for her. This Court is unaware of any agreement like this, however, it appears that this is factually accurate.

Second, Schlumbaum argues that her counsel was ineffective for not allowing her to testify at her trial. Schlumbaum contends that she wanted to testify at her criminal trial. Her trial counsel strongly disagrees with this contention, stating that after much discussion, Schlumbaum decided not to testify in order to avoid cross-examination and in order to avoid an obstruction of justice charge for giving perjured testimony under oath. (Government's Exhibit 1).

This Court is persuaded that her trial counsel, who has performed well in this Court over a number of years, had no reason to bar her from testifying and that the final say would have had to come from the defendant after full discussion of the pros and cons which then existed. As discussed below, the Government called numerous witnesses who testified that they purchased methamphetamine from Schlumbaum in the same manner.

Schlumbaum's own daughter testified that Schlumbaum was selling drugs.

Third, Schlumbaum contends that her counsel was ineffective because her counsel led her to believe that her sentence would be much less time than she actually received. This claim is directly contradicted by letters her attorney wrote her regarding her case. Government's Ex. 100 & 104. Her attorney sent her letters advising her that there was a 10 year mandatory minimum sentence in the case, and that her best guess under the guidelines was a minimum imprisonment of 135 months. These letters were sent shortly before Schlumbaum went to trial, and one shortly before she was sentenced. However, based on Schlumbaum's drug quantity, her base offense level was unfortunately much higher. Finally, as noted, Schlumbaum entered into a cooperation agreement whereby her sentencing range was stipulated to, and, as noted, she was hoping that the cooperation of her husband would reduce her sentence in the future.

Fourth, Schlumbaum argues that she was denied effective assistance of counsel because her counsel failed to inform the Court of her husband's cooperation. Here, as noted, there was an agreement between Schlumbaum and Government through Mr.

Bowers, whereby Schlumbaum would get credit for her husband's cooperation. This Court, nor any attorney present at the hearing, had encountered this type of agreement before.

However, contrary to Schlumbaum's contention, the Court was aware that her husband was cooperating with the Government. In a letter from Schlumbaum's former counsel dated April 18, 2003, the former attorney wrote "[the Judge] was told that [Schlumbaum's husband] was doing work that no one wanted disclosed in court, at least while it was ongoing." Government's Ex. 100. However, under the law in effect in 2003, all parties were aware that unless the Government made a motion under 18 U.S.C. §3553(e) or U.S.S.G. §5K1.1, the Court was powerless to sentence outside the sentencing guidelines. Government's Ex. 100.

Fifth, Schlumbaum alleges that her counsel was ineffective for failing to file pretrial motions. It is unclear to the Court which pretrial motions Schlumbaum wished her trial counsel would file. Without more, this Court is unable to speculate and find that her trial counsel's tactics were unsound or prejudicial as to this specific issue.

Sixth, Schlumbaum contends that her trial counsel was ineffective for not challenging the Government's witnesses

during trial. After reviewing the trial transcript, as noted below, the Court is persuaded that Schlumbaum's trial counsel strenuously sought to discredit the Government's witnesses, stressing that they were not credible because of their plea agreements, their hopes for reductions in their sentences, and the fact that they were housed in the same county jail before trial. Tr. 77-90, 99-105, 137-145, 159-165, 181-184, 200-203, 219-224. Schlumbaum's trial counsel also argued for a mistrial during the trial, and orally argued a motion for judgment of acquittal at the close of the Government's case. Tr. 267

Schlumbaum also argues that she was convicted, in part, based on the testimony of individuals who have little credibility. This argument is not an ineffective assistance of counsel claim and therefore is not properly before this Court. However, the Court will address her claims. "Credibility assessments are for a jury to make." <u>U.S. v. Grover</u>, 511 F.3d 779, 782 (8th Cir. 2007). "Consequently, a verdict based solely on the testimony of coconspirators and cooperating witnesses should normally be upheld." <u>Grover</u>, 511 F.3d at 782 (<u>citing</u> <u>United States v. Tabor</u>, 439 F.3d 826, 829 (8th Cir. 2006)).

At Schlumbaum's trial, Pamela Sullivan testified that she bought ounces quantities of methamphetamine once a week from Schlumbaum. Trial Transcript p. 21-91. Sullivan also testified that she saw Schlumbaum sell methamphetamine to others, and knew the Schlumbaum was supplying many others in the community. Stephanie Collett, Schlumbaum's daughter, also testified. Trial Transcript p. 92-107. She talked about Schlumbaum's drug dealing and identified many individuals who were buying from Schlumbaum. Wendi Pierce testified about purchasing drugs from Schlumbaum and her husband, and drug deals Schlumbaum had with Pierce's boyfriend. Trial Transcript p. 108-148. Teresa LeClair testified regarding Schlumbaum's drug dealing and her knowledge of Sullivan's and Schlumbaum's drug deals. Trial Transcript p. 149-166. Shane Ehlers testified that he distributed methamphetamine in Sioux City, and he was personally involved in dealing methamphetamine with Schlumbaum. Trial Transcript p. 167-184. Cathy Kempema testified about her dealings with Sullivan and her knowledge that Schlumbaum was Sullivan's source for methamphetamine. Trial Transcript p. 184-203. Cloie Hegge testified that she knew Schlumbaum was both selling and buying drugs in Sioux City. Trial Transcript p. 203-228. All these

individuals, except Collett, were involved in selling and/or buying drugs in Sioux City and had specific knowledge of Schlumbaum's drug dealings. They were all cross-examined by Schlumbaum's trial counsel regarding their present status regarding criminal prosecution, and their agreements with the Government to cooperate. Finally, Dail Fellin, a member of the DEA Drug Task Force testified regarding a car Schlumbaum sold to Jack Worden, an alleged member of the conspiracy, and his investigation into whether Schlumbaum sold methamphetamine near an elementary school. Trial Transcript p. 228-260. He also testified about his investigation into a large Sioux City methamphetamine conspiracy, which included Schlumbaum and the individuals who testified against her.

Based on the above facts and analysis, this Court is persuaded that Schlumbaum's trial counsel did not violate Schlumbaum's Sixth Amendment right to effective counsel and the Court finds no other grounds to correct, vacate, or set aside Schlumbaum's sentence.

## 2. Sentencing Issues

In her second argument, Schlumbaum argues that the Court failed to take evidence into consideration that warranted a departure, and that her sentence was excessive.

As mentioned above, Schlumbaum and the Government entered into a cooperation plea agreement whereby her base offense level, relevant departures, and criminal history were agreed upon. Therefore, this Court had little discretion in her sentencing. There were no motions before the Court for departures or variances, and both parties requested the Court to sentence Schlumbaum to the bottom of the sentencing guideline range. The Court is unaware of any evidence it could have taken into consideration that would warrant a departure as to this issue.

The Court finds no grounds to correct, vacate, or set aside Schlumbaum's sentence based on any sentencing issues.

### 3. Evidentiary Issues

In her third argument, Schlumbaum alleges that there were no drugs seized at the time of arrest, none introduced at trial, and therefore, presumably, she must be acquitted of the offense. (Docket No. 81, 4-5). She also states that she was convicted on the testimony of others, not based on physical evidence. (Docket No. 81-2, at 2). Because Schlumbaum did not raise these claims on direct appeal, they were procedurally defaulted. To overcome this default, Schlumbaum must demonstrate either (1) cause for the default and actual

prejudice or (2) actual innocence.  See Bousley v. United States, 523 U.S. 614, 622, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998); United States v. Moss, 252 F.3d 993, 1001 (8th Cir. 2001).  The Court is persuaded that Schlumbaum failed to make a showing of actual prejudice or actual innocence.  However, these issues will now be addressed.

To convict Schlumbaum of a conspiracy to distribute methamphetamine, the Government had to prove (1) the existence of a conspiracy, that is, the agreement to distribute drugs; (2) Schlumbaum knew of the conspiracy; and (3) Schlumbaum intentionally joined the conspiracy.  United States v. Rolon-Ramos, 502 F.3d 750, 754 (8th Cir. 2007).  To sustain a conviction, the Court must examine the evidence in the light most favorable to the jury verdict and giving the verdict the benefit of all reasonable inferences.  United States v. Wintermute, 443 F.3d 993, 1003 (8th Cir. 2006).  The Court will reverse the jury verdict only if no reasonable jury could have found Schlumbaum guilty.  United States v. Sanders, 341 F.3d 809, 815 (8th Cir. 2003).

As set out above, during the trial numerous witnesses testified they purchased drugs from Schlumbaum and saw her selling drugs.  These witnesses included Pam Sullivan, Wendi

19

Pierce, Theresa LeClair, Shane Ehlers, Cathy Kempema, Cloie Hegge and Stephanie Collett, Schlumbaum's daughter. Furthermore, Schlumbaum debriefed following the jury verdict. During this debriefing, she corroborated these witnesses' trial testimony. Contrary to Schlumbaum's assertion, no physical evidence is needed for a conviction for conspiracy to distribute. See U.S. v. Becerra, 435 F.3d 931, 937 (8th Cir. 2006)("A conspiracy to distribute methamphetamine that is proved beyond a reasonable doubt through the testimony of co-conspirators without physical evidence of controlled substances (a so-called 'dry conspiracy') is no less serious than a comparable conspiracy that is proved beyond a reasonable doubt through the introduction of seized contraband.")

The Court is persuaded that the jury verdict is supported by the evidence and finds no grounds to correct, vacate, or set aside Schlumbaum's sentence.

### III. CONCLUSION

Therefore, this Court finds no permissible reason to correct, vacate, or set aside Schlumbaum's sentence of 262 months.

**IT IS THEREFORE HEREBY ORDERED** that Defendant's motion to vacate, set aside, or correct a sentence under 28 U.S.C. §2255, Docket No. 81, and as amended at Docket No. 86, is **denied**.

**IT IS FURTHER HEREBY ORDERED** the Government's motion to dismiss (Docket No. 87) is hereby **denied as moot**.

**IT IS FURTHER HEREBY ORDERED** that an Addendum shall be attached to this Order and made a part of the Order.

**IT IS SO ORDERED** this 30th day of September, 2009.

Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa

This Court is persuaded that Defendant Schlumbaum's long sentence is unfair, but the Court is not in any position to shorten it.  The sentence of 262 months was imposed at a time when the sentencing guidelines were mandatory.

This Court presided at her trial, had full access to the exhibits, heard the arguments and thereafter participated in three or four hearings in relation to these matters; and based on that information, is able to conclude the following was substantially the way it all happened.

Defendant Schlumbaum was married to Johnny Ochoa.  Ochoa was involved in the sale of large quantities of drugs, made large amounts of cash and sent it to his son.  Defendant Schlumbaum, at Ochoa's direction, did what he told her to do in the drug business.  Ochoa kept in the background. Schlumbaum never mentioned Ochoa's control over her.  Even after she was sentenced to 262 months, she did not disclose his leadership because Ochoa agreed that he would give the Government the details of what he knew.  Former Assistant United States Attorney Jamie Bowers, in furtherance of this

offer, requested the Honorable Magistrate Judge Paul A. Zoss to appoint Ochoa a court-appointed attorney because Bowers wanted to use Ochoa in a pending drug investigation as a participant who would contact his suppliers and make cases for the Drug Task Force. Judge Zoss did make the appointment, and Ochoa met with the Drug Task Force on at least two occasions. Mr. Bowers told Defendant Schlumbaum's attorney, Martha McMinn, and Defendant Schlumbaum, that while it was not the ordinary course of business, that the cases Ochoa helped to make would be considered as help to Defendant Schlumbaum and she would likely be given a Rule 35 motion to reduce her long sentence substantially. Attorney Martha McMinn agrees this conversation took place at a time when Jamie Bowers was a full-time Assistant United States Attorney and as far as anyone knew, he had authority to make such arrangements.

Jamie Bowers said that Officer Drew was one of the Task Force members who met with Ochoa and Bowers. Officer Drew testified that he had been in hundreds of such meetings, but had no recall of this specific meeting. He testified that if he was there, he made extensive notes which would be in an Ochoa file.

The United States Attorney's Office now says that it has no file on Johnny Ochoa. That office further says that Jamie Bowers does not work with us anymore, that Johnny Ochoa never testified in any Grand Jury or trial, that it never charged him with anything, that it does not know where he is, and that it has no pending matters against him.

Defendant Schlumbaum finally concluded that the husband she protected so that he would help her is not now available and she will be getting no help. She will testify against him.

Defendant Schlumbaum, during the course of these proceedings, entered into a post-trial cooperation agreement (Government's Exhibit 101). In paragraph 30a, it sets out that Defendant Schlumbaum and Johnny Ochoa distributed over 15 kilograms of methamphetamine.

Officer Drew testified that during his many years on the Drug Task Force, he never knew of a prospective defendant who was not charged in a situation where testimony was available that that person had dealt in over 15 kilograms of methamphetamine.

From this Court's observation of many, many drug cases over the last 20 years, the only way for Johnny Ochoa to not

be charged is if he gave the Task Force so much information that the United States Attorney's Office agreed he would not be charged. However, if that situation had happened, Ochoa would be named in many files and would testify in cases which has not happened here.

In the first sentence of this Addendum, the Court stated that Defendant Schlumbaum's long sentence is unfair. The Government had, if it does not have it now, information that this Defendant should be made aware of. Assistant U.S. Attorney Jamie Bowers' statements should be lived up to.

This Addendum, in order to fully set out why Defendant Schlumbaum was treated unfairly, was ten pages long so as to anticipate all excuses to assist her and comment on them. However, the Court is not filing that ten page resume as it is just too long. This Addendum will not aid Defendant Schlumbaum now, but it is added to this ruling in the hope that the Congress and the Commission, some time in the future, will come to the conclusion that drug prisoners who have been incarcerated for 15 or 20 years might get some relief.

**DATED** this 30th day of September, 2009.

Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa

iv